

September 11, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Jack Arthur, Compliance Manager and
Legally Responsible Person
Jose Maldonado, Facility Supervisor
Taylor Farms California, Inc.
1207 Abbot Street
Salinas, CA 93901

Bruce Taylor, Chief Executive Officer
John Mazzei, Secretary and Agent for Service of
Process
Taylor Farms California, Inc.
150 Main Street, Suite 400
Salinas, CA 93901

**Re:   NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
(33 U.S.C. §§ 1251 *et seq.*)**

Dear Jack Arthur, Jose Maldonado, Bruce Taylor, and John Mazzei:

("CSPA") and Monterey Waterkeeper ("MWK") write regarding violations of the Clean
Water Act (also referred to herein as the "Act") occurring at Taylor Farms California, Inc.
facility located at 1207 Abbot Street, in Salinas, California 93901 ("Facility"). This letter is
being sent to you individually, as the responsible owners and/or operators of the enterprise, and
as the registered agent for these entities. Unless otherwise noted, Jack Arthur, Jose Maldonado,
Bruce Taylor, John Mazzei, and Taylor Farms California, Inc. shall hereinafter be collectively
referred to as "Taylor Farms." The purpose of this letter is to provide Taylor Farms with notice
of the violations of the Industrial General Permit occurring at the Facility, including, but not
limited to, noncompliant discharges of polluted storm water associated with industrial activities
from the Facility into local surface waters.

Taylor Farms is in ongoing violation of the substantive and procedural requirements of
the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and National Pollutant Discharge Elimination
System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board
Water Quality Order No. 14-57-DWQ as amended by Order No. 2015-0122-DWQ & Order No.
2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total
Maximum Daily Load ("TMDL") Implementation Requirements; and 3) Statewide Compliance
Options Incentivizing On-Site or Regional Storm Water Capture and Use (collectively "General
Permit" or "Permit").[1]

---

[1] Taylor Farms most recently submitted a Notice of Intent to comply with the General Permit for
the Facility on or about May 4, 2015. The Facility is assigned the Waste Discharge
Identification Number 3 27I017307.

Notice of Violation and Intent to File Suit
September 11, 2025
Page 2

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects Taylor Farms to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter. These provisions of law authorize civil penalties of up to $68,445 per day per violation for all Clean Water Act violations occurring after November 2, 2015, where penalties are assessed on or after January 8, 2025.

In addition to civil penalties, CSPA and MWK will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CSPA and MWK intend to file suit under Section 505(a) of the Act in federal court against Taylor Farms for violations of the Clean Water Act and the Permit.

## I.  Background.

### A.  California Sportfishing Protection Alliance

CSPA is a 501(c)(3) nonprofit public benefit conservation and research organization dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources throughout the state of California. Members of CSPA own homes and reside in the communities nearby to Monterey Bay into which Taylor Farms discharges polluted storm water. To further its mission, CSPA actively seeks federal and state implementation of the Clean Water Act. Where necessary, CSPA directly initiates enforcement actions on behalf of itself and its members.

Members of CSPA work and reside in Monterey County, and use and enjoy Monterey Bay, and its tributaries, and the bordering parks and pathways. As explained in detail below, Taylor Farms discharges pollutants into Monterey Bay via Alisal Slough and the Salinas River in violation of the Clean Water Act and the General Permit. CSPA members also use and enjoy Monterey Bay, including, to fish, bike, boat, kayak, bird watch, view wildlife, hike, and walk, among other recreational activities. Additionally, CSPA members use Monterey Bay to engage in scientific study through pollution and habitat monitoring and restoration activities. The unlawful discharge of pollutants from the Facility into Monterey Bay impairs CSPA members' use and enjoyment of these waters. The unlawful discharge of pollutants from the Facility requires CSPA to expend its limited resources to study and combat pollution from the Facility. Thus, the interests of CSPA and its members have been, are being, and will continue to be

2

adversely affected by Taylor Farms' failure to comply with the Clean Water Act and the General Permit.

### B.    Monterey Waterkeeper.

Monterey Waterkeeper is a 501(c)(3) environmental, non-profit public benefit organization in accordance with the laws of the State of California. Using law, policy, and science, Monterey Waterkeeper protects and restores drinkable, fishable, and swimmable waters for all in the Monterey Region and along the Central Coast for all to enjoy. Monterey Waterkeeper conducts outdoor education and policy advocacy to ensure that all Central Coast residents have access to clean waters. Monterey Waterkeeper also actively seeks federal and state agency implementation of the Clean Water Act and; where necessary, initiates enforcement actions on behalf of itself and its members. Monterey Waterkeeper's mailing address is P.O. Box 4311, Salinas, CA 93912. Monterey Waterkeeper and its members throughout Monterey, Santa Cruz, and San Benito Counties have an interest in the preservation and use of the northern Central Coast's waters, including the Receiving Waters. Monterey Waterkeeper's members use and enjoy the Receiving Waters and the areas around them to kayak, picnic, fish, hike, and enjoy wildlife, including nearby populations of marine mammals such as sea otters and harbor seals. Discharges of pollutants from the Facility into these waters impairs Monterey Waterkeeper' s members' use and enjoyment of these waters. The unlawful discharge of pollutants from the Facility has also required Monterey Waterkeeper to expend its limited resources to study and combat pollution from the Facility. Taylor Farms' actions result in numerous injuries to Monterey Waterkeeper's and its members' interests, including loss, destruction, or damage to wetlands and waterways; diminished aesthetic enjoyment of these waters; loss of habitat for wildlife, including birds and federally protected species; degraded water quality; and diminished quality of life. The ability of Monterey Waterkeeper' s members to kayak, picnic, fish, hike, and enjoy the wildlife in and around these waters, and to use and enjoy Monterey Bay is harmed by Taylor Farms' ongoing and continuous violations of law. Thus, the interests of Monterey Waterkeeper's members have been, are, and will continue to be adversely affected by Taylor Farms' failure to comply with the Clean Water Act and the Storm Water Permit.

### C.    The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Bay Keeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing

3

California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of the EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

## D.    California's General Permit for Storm Water Discharges Associated with Industrial Activities

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. These facilities must file their NOIs before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA. The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

Under the General Permit Facilities must submit Exceedance Response Action Plans ("ERA Report") to the State Board outlining effective plans to reduce pollutants if a Facility reports a pollutant above the Numeric Action Level ("NAL"). An annual NAL exceedance occurs when the average of all the analytical results for a parameter from samples taken within a reporting year exceeds the annual NAL value for that parameter. General Permit Section XII.A. An instantaneous maximum NAL exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value or are outside of the instantaneous maximum NAL range for pH. *Id.*

## E.    Taylor Farms' Facility

Taylor Farms' Facility is located at 1207 Abbott Street in Salinas, California 93901. According to its SWPPP, last updated January 2025, the Facility's primary industrial purpose is the washing, processing, bagging and cold storage of fresh cut produce. The SWPPP also states that the Facility operates seven days a week 6:00 a.m. to 12:00 a.m.

Information available to CSPA and MWK indicates that Taylor Farms conducts industrial activities both indoors and outdoors at the approximately 24.5-acre Facility. Industrial activities at the Facility include, but are not limited to: washing, cutting, processing, and cold storage of fresh cut produce, operation of equipment in support of these activities, chemical storage, operation of forklifts, tote bin washing, carton and pallet storage, and equipment maintenance.

Under the General Permit, Taylor Farms is required to analyze its samples of storm water for total suspended solids, oil and grease, and pH. Facilities must also sample and analyze for additional parameters identified on a facility-specific basis for parameters identified in a pollutant source assessment, for parameters related to receiving water impairments, or as required by the Regional Board. General Permit, Section XI.B.6. According to the Facility's

4

NOI, Taylor Farms operates under Standard Industrial Classification ("SIC") Codes 2099 ("Food Preparations, Not Elsewhere Classified") and 4222 ("Refrigerated Warehousing and Storage").

According to its SWPPP, Taylor Farms collects and discharges storm water associated with industrial activities at the Facility through at least three discharge locations, Discharge Location-1, Discharge Location-2, and Discharge Location 3.

The SWPPP suggests that the Facility is divided into two areas, an area that drains to an industrial waste conveyance system, and a storm water drainage area. According to the SWPPP, the areas related to industrial activities located in the storm water drainage area include the fresh produce loading and unloading area (truck docks), the employee parking area, and the carton and pallet storage area.

Two of the three discharge points (DP-1 and DP-2) are equipped with a diversion valve that allows flows to be diverted to the industrial waste system. When the valve is opened, water flows into the municipal storm sewer system on Harkins Street, and from there into Alisal Creek, and ultimately into Monterey Bay. Past practice at the Facility was to leave the diversion valves closed during the seasonal operations, and open during the rest of the year; however, the Facility currently operates year-round. The SWPPP suggests that only DP-3 discharges storm water to the municipal storm sewer system.

The areas of industrial activities are sources of pollutants at the Facility. In particular, pollutants of concern from these industrial areas and activities at the Facility include total suspended solids ("TSS"), oil and grease ("O&G"), aluminum ("Al"), iron ("Fe"), and nitrite plus nitrate nitrogen ("N+N"). Sources of these pollutants include the industrial activities discussed above, tracking of soils, dust, debris, and waste from other areas and offsite from trucks, leaks from trucks, trailers, equipment, and other vehicles. These pollutants are entrained in storm water runoff and can be tracked offsite by vehicles and other equipment. The industrial activities and areas of industrial activity discussed herein generate and release these pollutants from the Facility, and the Facility discharges them via storm water discharges to municipal storm drains that discharge to Alisal Creek,[2] Salinas River, and Monterey Bay and ultimately to the Pacific Ocean ("Receiving Waters"). The Receiving Waters are waters of the United States within the meaning of the Clean Water Act.

## II.   Taylor Farms' Violations of the Act and Permit.

Any person or facility discharging storm water associated with industrial activity must comply with the General Permit. *See* 33 U.S.C. §§ 1311(a); 1342; 40 C.F.R. § 122.26(c)(1); General Permit Fact Sheet at VII.

Based on its review of available public documents, CSPA and MWK are informed and believe that Taylor Farms, through its operation of the Facility, is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act,

---

[2] Alisal Creek is also referred to as Alisal Slough.

Notice of Violation and Intent to File Suit
September 11, 2025
Page 6

Taylor Farms is subject to penalties for violations of the Act since September 11, 2020. CSPA expects to identify additional storm water discharges conveying pollutants to the Receiving Waters in violation of the CWA and the General Permit through further investigation of the Facility and as this matter progresses through the rainy season.

### A.   Taylor Farms Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

Taylor Farms' storm water sampling results provide conclusive evidence of Taylor Farms' failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations at its Facility. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1987).

### 1.   Applicable Water Quality Standards.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies. General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. General Permit, Special Condition XX.B. The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id.*

The Water Quality Control Plan for the Central Coastal Basin ("Basin Plan") sets forth water quality standards and prohibitions applicable to Taylor Farms' storm water discharges from its Facility. The Basin Plan identifies existing and potential Beneficial Uses for water bodies in the Central Coastal Basin, such as Alisal Creek and Salinas River, such as municipal and domestic supply, agricultural supply, water contact and non-water contact recreation, commercial and sport fishing, groundwater recharge, warm and cold fresh water habitat, wildlife habitat, and spawning, reproduction, and/or early development. (Basin Plan, Table 2-1.)

### 2.   Applicable Effluent Limitations.

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit, Effluent Limitation V.A. Conventional pollutants

6

include total suspended solids, oil & grease, pH, biochemical oxygen demand and fecal coliform.
40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§
401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA
benchmarks") and Numeric Action Levels ("NAL") serve as guidelines for determining whether
a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa
Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); General
Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by
Taylor Farms: total suspended solids – 100 mg/L; pH – 6.0-9.0 s.u.; aluminum – 1.1 mg/L; and,
nitrate and nitrite nitrogen – 0.68 mg/L. The following Annual NALs have been established for
pollutants discharged by Taylor Farms: total suspended solids – 100 mg/L; oil & grease – 15.0
mg/L; aluminum – 0.75 mg/L; iron – 1.0 mg/L; and nitrate plus nitrite nitrogen – 0.68 mg/L.
Additionally, the following instantaneous NALs have been established for pollutants discharged
by Taylor Farms: pH – 6.0-9.0 s.u.; total suspended solids – 400 mg/L; and oil & grease – 25.0
mg/L.

The General Permit also requires a permittee whose discharges violate the General
Permit's Receiving Water Limitations or water quality standards, such as NALs, to implement
additional BMPs or other control measures that are tailored to that facility in order to attain
compliance with the receiving water limitation. A discharger that is notified by a Regional
Board or who determines the discharge is causing or contributing to an exceedance of a water
quality standard must comply with the Water Quality Based Corrective Action in Section XX.B
of the General Permit and report to the Regional Board regarding the same. General Permit,
Section XX.B.

### 3.    Taylor Farms' Storm Water Sample Results

As detailed above, Taylor Farms' SWPPP describes three discharge points/sampling
locations. Storm water discharged from the Facility flows into the municipal separate storm
sewer system to the Receiving Waters.

Except as provided in Section XI.C.4 of the General Permit, samples shall be collected
from each drainage area at all discharge locations. The samples must be: a) representative of
storm water associated with industrial activities and any commingled authorized non-storm water
discharges; or, b) associated with the discharge of contained storm water. At this time, CSPA is
unable to determine if storm water from the three sampling points at the Facility is representative
of industrial storm water at the Facility.

The following discharges of pollutants from the Facility have violated the discharge
prohibitions, receiving water limitations and effluent limitations of the Permit:

Notice of Violation and Intent to File Suit
September 11, 2025
Page 8

a. **Discharge of Storm Water Containing Aluminum at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|
| 3/5/2025 | DP-3 | Al | 2 | 1.1 | 0.75 |
| 1/27/2025 | DP-3 | Al | 2.7 | 1.1 | 0.75 |
| 1/27/2025 | DP-2 | Al | 2.2 | 1.1 | 0.75 |
| 1/27/2025 | DP-1 | Al | 1.1 | 1.1 | 0.75 |
| 2/20/2024 | DP-3 | Al | 1.7 | 1.1 | 0.75 |
| 2/20/2024 | DP-1 | Al | 1.4 | 1.1 | 0.75 |
| 1/24/2024 | DP-1 | Al | 2.5 | 1.1 | 0.75 |
| 1/24/2024 | DP-3 | Al | 1.9 | 1.1 | 0.75 |
| 1/22/2024 | DP-1 | Al | 1.7 | 1.1 | 0.75 |
| 1/22/2024 | DP-3 | Al | 1.8 | 1.1 | 0.75 |
| 3/9/2023 | DP-3 | Al | 1.5 | 1.1 | 0.75 |
| 12/5/2022 | DP-2 | Al | 2.2 | 1.1 | 0.75 |
| 12/5/2022 | DP-3 | Al | 3.5 | 1.1 | 0.75 |
| 12/1/2022 | DP-2 | Al | 3.5 | 1.1 | 0.75 |
| 12/1/2022 | DP-3 | Al | 4.7 | 1.1 | 0.75 |
| 3/19/2022 | DP-2 | Al | 3.3 | 1.1 | 0.75 |
| 3/19/2022 | DP-1 | Al | 0.92 | 1.1 | 0.75 |
| 12/13/2021 | DP-2 | Al | 5.2 | 1.1 | 0.75 |
| 12/13/2021 | DP-3 | Al | 1.2 | 1.1 | 0.75 |
| 3/10/2021 | DP-2 | Al | 2 | 1.1 | 0.75 |
| 2/2/2021 | DP-2 | Al | 1.1 | 1.1 | 0.75 |
| 2/2/2021 | DP-3 | Al | 1.1 | 1.1 | 0.75 |
| 1/27/2021 | DP-3 | Al | 1.5 | 1.1 | 0.75 |

b. **Discharge of Storm Water Containing Iron at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL (mg/L) |
|---|---|---|---|---|
| 3/5/2025 | DP-3 | Fe | 1.8 | 1.0 |
| 1/27/2025 | DP-3 | Fe | 3 | 1.0 |
| 1/27/2025 | DP-2 | Fe | 2 | 1.0 |
| 2/20/2024 | DP-3 | Fe | 1.8 | 1.0 |
| 2/20/2024 | DP-1 | Fe | 1.5 | 1.0 |
| 1/24/2024 | DP-1 | Fe | 1.8 | 1.0 |

8

Notice of Violation and Intent to File Suit
September 11, 2025
Page 9

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL (mg/L) |
|---|---|---|---|---|
| 1/22/2024 | DP-1 | Fe | 1.5 | 1.0 |
| 3/9/2023 | DP-3 | Fe | 1.9 | 1.0 |
| 12/5/2022 | DP-2 | Fe | 2.5 | 1.0 |
| 12/5/2022 | DP-3 | Fe | 3.8 | 1.0 |
| 12/1/2022 | DP-2 | Fe | 3.7 | 1.0 |
| 12/1/2022 | DP-3 | Fe | 5.2 | 1.0 |
| 3/19/2022 | DP-2 | Fe | 4.9 | 1.0 |
| 12/13/2021 | DP-2 | Fe | 7.2 | 1.0 |
| 12/13/2021 | DP-3 | Fe | 1.3 | 1.0 |
| 3/10/2021 | DP-2 | Fe | .5.3 | 1.0 |
| 2/2/2021 | DP-2 | Fe | 1.7 | 1.0 |
| 2/2/2021 | DP-3 | Fe | 1.2 | 1.0 |
| 1/27/2021 | DP-3 | Fe | 1.7 | 1.0 |

c. **Discharge of Storm Water Containing N+N Violating Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL & EPA Benchmark (mg/L) |
|---|---|---|---|---|
| 3/5/2025 | DP-2 | N+N | 1.6 | 0.68 |
| 3/5/2025 | DP-3 | N+N | 1.1 | 0.68 |
| 1/27/2025 | DP-3 | N+N | 1.2 | 0.68 |
| 1/27/2025 | DP-2 | N+N | 10 | 0.68 |
| 12/12/2024 | DP-2 | N+N | 2.8 | 0.68 |
| 2/20/2024 | DP-2 | N+N | 0.92 | 0.68 |
| 1/24/2024 | DP-1 | N+N | 1.4 | 0.68 |
| 1/24/2024 | DP-2 | N+N | 3.7 | 0.68 |
| 1/24/2024 | DP-3 | N+N | 4.1 | 0.68 |
| 1/22/2024 | DP-2 | N+N | 1.2 | 0.68 |
| 1/22/2024 | DP-3 | N+N | 2.6 | 0.68 |
| 12/5/2022 | DP-2 | N+N | 3.5 | 0.68 |
| 12/5/2022 | DP-3 | N+N | 46 | 0.68 |
| 12/1/2022 | DP-2 | N+N | 0.88 | 0.68 |
| 3/19/2022 | DP-2 | N+N | 1.4 | 0.68 |
| 3/19/2022 | DP-1 | N+N | 6.5 | 0.68 |
| 2/2/2021 | DP-1 | N+N | 1.1 | 0.68 |
| 1/22/2021 | DP-1 | N+N | 0.71 | 0.68 |

9

### d. Taylor Farms' Sample Results Are Evidence of Violations of the General Permit

Taylor Farms' sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. CSPA and MWK are informed and believe that Taylor Farms has known that its storm water contains pollutants at levels exceeding applicable water quality standards since at least September 11, 2020, including at least twenty-three exceedances of water quality standards for aluminum; nineteen exceedances of water quality standards for iron; and, eighteen exceedances of water quality standards for nitrate plus nitrite nitrogen.

CSPA and MWK allege that such violations occur each time storm water discharges from the Facility. **Attachment 1** hereto, sets forth the specific rain dates on which CSPA and MWK allege that Taylor Farms has discharged storm water containing impermissible levels of aluminum, iron, and nitrate plus nitrite nitrogen in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D; Receiving Water Limitations VI.A, VI.B; Effluent Limitations V.A and V.C.

### 4. Taylor Farms Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit, Sections V, X.H.1-2.

Taylor Farms has failed to implement and maintain the minimum BMPs required by the General Permit as evidenced by the exceedances identified above. Specifically, Taylor Farms has failed to comply with the following: good housekeeping requirements, preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. Permit, Section X.H.1(a-g).

Taylor Farms has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. General Permit, Sections X.H.2. Taylor Farms' own storm water sampling results are further evidence of its failure to implement BMPs that meet the BAT/BCT standards. In reporting years identified below, Taylor Farms has exceeded the applicable NAL for aluminum, iron, and nitrate plus nitrite nitrogen. CSPA alleges that if Taylor Farms had collected the required number of samples in each reporting period, it would have exceeded the applicable NAL for additional pollutants, and in additional years.

Notice of Violation and Intent to File Suit
September 11, 2025
Page 11

| Reporting Year | Pollutant | Average Pollutant Concentration | Numeric Action Level (Annual) |
|---|---|---|---|
| 2024-2025 | Al | 1.09 mg/L | 0.75 mg/L |
| 2023-2024 | Al | 1.37 mg/L | 0.75 mg/L |
| 2022-2023 | Al | 2.62 mg/L | 0.75 mg/L |
| 2021-2022 | Al | 2.25 mg/L | 0.75 mg/L |
| 2024-2025 | Fe | 1.07 mg/L | 1.00 mg/L |
| 2023-2024 | Fe | 1.05 mg/L | 1.00 mg/L |
| 2022-2023 | Fe | 2.94 mg/L | 1.00 mg/L |
| 2021-2022 | Fe | 3.01 mg/L | 1.00 mg/L |
| 2020-2021 | Fe | 1.17 mg/L | 1.00 mg/L |
| 2024-2025 | N+N | 2.24 mg/L | 0.68 mg/L |
| 2023-2024 | N+N | 1.63 mg/L | 0.68 mg/L |
| 2022-2023 | N+N | 8.51 mg/L | 0.68 mg/L |
| 2021-2022 | N+N | 1.76 mg/L | 0.68 mg/L |

Despite multiple years of documented storm water pollution, Taylor Farms has failed to implement and maintain effective sufficient to control pollutant discharges at the Facility. As of the 2023–2024 reporting year, the Facility remains in Level 2 ERA status for iron, aluminum, and nitrate plus nitrite nitrogen.

While Taylor Farms has purportedly taken nominal steps over the past several reporting years—such as increasing mechanical sweeping frequency, installing drain insert filters, and deploying wattles and media socks—these measures have not resulted in meaningful reductions in pollutant concentrations below applicable NAL thresholds. Indeed, Taylor Farms' own Level 2 Technical Reports confirm that while pollutant concentrations have decreased in some areas, each of the parameters identified above still exceeds its annual NAL.

Taylor Farms attributes delays in implementation of source control measures—particularly remediation of eroding landscaped areas near DP-3 and sample point relocation—to internal disruptions caused by a 2022 Facility fire. However, as of the most recent inspections in 2024, erosion, sediment accumulation, and runoff from adjacent roadways and landscaped areas remain unresolved, continuing to drive pollutant loads.

In addition, post-production cleaning and maintenance efforts at the Facility have proven inadequate. During inspections conducted in 2024, the following conditions were observed:

- Dark staining and organic residue on paved surfaces from broken-down leafy greens, which were not fully removed prior to storm drain activation;
- Tracking of pollutants from foot, truck, and forklift traffic across processing areas; and,
- Ongoing exposure of metal particulates near maintenance areas and unpaved surfaces that have not been enclosed or remediated.


Notice of Violation and Intent to File Suit
September 11, 2025
Page 12

Moreover, although Taylor Farms has proposed further BMPs—such as the installation of rubber drain covers and power washing of paved surfaces—these improvements did not result in meeting NALs, because storm water sampling in the 2024-2025 reporting period continues to capture pollutant concentrations well above NALs across multiple discharge points.

Taylor Farms has failed to implement BAT/BCT at the Facility because the Facility continues to discharge storm water containing pollutants in concentrations that exceed NALs and NELs. Taylor Farms recorded at least 4 NAL exceedances for aluminum, three for iron, and four for nitrate plus nitrite nitrogen after the BMPs identified above were apparently implemented in 2024.

Each day that Taylor Farms has failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). Taylor Farms has been in violation of the BAT and BCT requirements at its Facility every day since at least September 11, 2020.

## 5. Taylor Farms Has Failed to Comply with the Monitoring Requirements of the General Permit.

The General Permit requires dischargers to implement a Monitoring Implementation Plan. General Permit, Section X.I. As part of their monitoring plan, dischargers must identify all storm water discharge locations. Permit, Section X.I.2. Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events. General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 30). General Permit, Section XI.B. Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. General Permit, Section XI.B.6. Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event. General Permit, Section XI.B.11.

Taylor Farms has failed to develop and implement an adequate Monitoring Implementation Plan for its Facility, and has thus violated the monitoring requirements of the General Permit. Taylor Farms has failed to collect the required number of samples for each reporting period, and has failed to have each of those samples analyzed for all required parameters. For example, Taylor Farms failed to collect the required number of samples from the following discharge points during the specified reporting years:

Notice of Violation and Intent to File Suit
September 11, 2025
Page 13

| Reporting Year | Discharge Point | Number of Samples Collected in 1st Half of Reporting Period[3] | Number of Samples Collected in 2nd Half of Reporting Period[3] |
|---|---|---|---|
| 2024-2025 | DP-3 | 1 | 2 |
| 2023-2024 | DP-1 | 0 | 3 |
| 2023-2024 | DP-2 | 0 | 3 |
| 2023-2024 | DP-3 | 0 | 3 |
| 2022-2023 | DP-1 | 0 | 0 |
| 2022-2023 | DP-2 | 2 | 1 |
| 2022-2023 | DP-3 | 2 | 1 |
| 2021-2022 | DP-1 | 1 | 1 |
| 2021-2022 | DP-2 | 1 | 1 |
| 2021-2022 | DP-3 | 1 | 0 |
| 2020-2021 | DP-1 | 0 | 4 |
| 2020-2021 | DP-2 | 0 | 3 |
| 2020-2021 | DP-3 | 0 | 4 |

Each day that Taylor Farms has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. Taylor Farms has been in violation of the Monitoring requirements every day since at least September 11, 2020.

### 6. Taylor Farms Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and, (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B.

CSPA and MWK's investigation indicates that Taylor Farms has been operating with an inadequately developed and implemented SWPPP in violation of General Permit requirements.

---

[3] Unless part of a Compliance Group, Dischargers are required to collect and analyze storm water samples from two QSEs in each half of the reporting period.

Notice of Violation and Intent to File Suit
September 11, 2025
Page 14

Taylor Farms has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, has failed to develop and implement an adequate site map, and has failed to describe and evaluate the industrial materials and potential pollutant sources at the Facility, all of which have resulted in the Facility's numerous continuing effluent limitation violations.

Each day Taylor Farms failed to develop and implement an adequate SWPPP at its Facility is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. Taylor Farms has been in violation of these requirements at its Facility every day since at least September 11, 2020.

### 7. Taylor Farms Has Failed to Submit Timely, True and Correct Reports.

Section XVI of the Permit requires dischargers to submit an Annual Report by July 15th of each reporting year to the Regional Board. The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative. General Permit, Sections XVI.A, XXI.K. The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance. General Permit, Section XVI.B.

The General Permit also requires dischargers who exceed NALs to comply with Exceedance Response Actions, Section XII.

CSPA and MWK's investigations indicate that Taylor Farms has failed to submit all required reports pursuant to Section XII in response to their numerous exceedances of NALs. Further, Taylor Farms' ERA reports and action plans are inadequate as evidenced by the continued exceedances of iron, aluminum, and nitrate plus nitrite nitrogen, even after apparently full implementation of the BMPs described therein. Each day Taylor Farms failed to submit timely, true and correct reports is a separate violation of the Clean Water Act. Taylor Farms has been in violation of these requirements at its Facility every day since at least September 11, 2020.

## III. Persons Responsible for the Violations.

CSPA and MWK put Taylor Farms on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA and MWK put Taylor Farms on formal notice that it intends to include those persons in this action.

Notice of Violation and Intent to File Suit
September 11, 2025
Page 15

## IV.     Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

California Sportfishing Protection Alliance
1608 Francisco Street
Berkeley, CA 94703
(510) 421-2405

Monterey Waterkeeper
P.O. Box 4311
Salinas, CA 93912
(831) 204-1381

## V.     Counsel.

CSPA and MWK have retained legal counsel to represent it in this matter. Please direct all communications to:

### CSPA

William N. Carlon
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 5144115
william@carlonlaw.com

### Monterey Waterkeeper

Drevet Hunt
Legal Director
California Coastkeeper Alliance
1100 11th Street, 3rd Floor
Sacramento, CA 95814
(415) 606-0864
dhunt@cacoastkeeper.org

Natalie Herendeen
Executive Director
Monterey Waterkeeper
P.O. Box 4311
Salinas, CA 93912
(831) 204-1381
(831) 809-5530
natalie@montereywaterkeeper.org

## VI.     Conclusion

CSPA and MWK believe this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Taylor Farms and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

15

Notice of Violation and Intent to File Suit
September 11, 2025
Page 16

Sincerely,

William N. Carlon
Law Office of William Carlon


Drevet Hunt
Legal Director, California Coastkeeper Alliance


Natalie Herendeen
Executive Director, Monterey Waterkeeper

## SERVICE LIST

## VIA CERTIFIED MAIL

Lee Zeldin, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Josh F.W. Cook, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Pamela Bondi, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eric Oppenheimer, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Ryan E. Lodge, Executive Officer
Central Coast Regional Water Quality Control Board
895 Aerovista Place, Suite 101
San Luis Obispo, CA 93401-7906

**ATTACHMENT A**
**Notice of Intent to File Suit, Taylor Farms**
**Significant Rain Events,* September 11, 2020 – September 11, 2025**

| | | | |
|---|---|---|---|
| November 7, 2020 | December 2, 2022 | October 23, 2023 | November 23, 2024 |
| November 18, 2020 | December 4, 2022 | November 18, 2023 | November 25, 2024 |
| December 12, 2020 | December 6, 2022 | December 17, 2023 | November 26, 2024 |
| December 13, 2020 | December 11, 2022 | December 18, 2023 | December 12, 2024 |
| December 14, 2020 | December 12, 2022 | December 19, 2023 | December 13, 2024 |
| December 17, 2020 | December 27, 2022 | December 20, 2023 | December 14, 2024 |
| January 23, 2021 | December 28, 2022 | December 28, 2023 | December 17, 2024 |
| January 27, 2021 | December 29, 2022 | December 30, 2023 | December 24, 2024 |
| January 28, 2021 | December 30, 2022 | January 3, 2024 | December 27, 2024 |
| January 29, 2021 | December 31, 2022 | January 11, 2024 | January 26, 2025 |
| February 2, 2021 | January 1, 2023 | January 14, 2024 | February 5, 2025 |
| February 12, 2021 | January 4, 2023 | January 17, 2024 | February 6, 2025 |
| March 10, 2021 | January 5, 2023 | January 21, 2024 | February 12, 2025 |
| March 15, 2021 | January 6, 2023 | January 22, 2024 | February 13, 2025 |
| March 19, 2021 | January 8, 2023 | January 24, 2024 | February 14, 2025 |
| October 22, 2021 | January 9, 2023 | January 25, 2024 | March 2, 2025 |
| October 25, 2021 | January 10, 2023 | February 1, 2024 | March 5, 2025 |
| October 26, 2021 | January 14, 2023 | February 2, 2024 | March 6, 2025 |
| November 9, 2021 | January 15, 2023 | February 4, 2024 | March 13, 2025 |
| December 7, 2021 | January 16, 2023 | February 5, 2024 | March 14, 2025 |
| December 9, 2021 | January 17, 2023 | February 6, 2024 | March 17, 2025 |
| December 13, 2021 | January 19, 2023 | February 8, 2024 | April 1, 2025 |
| December 14, 2021 | February 5, 2023 | February 15, 2024 | April 2, 2025 |
| December 16, 2021 | February 11, 2023 | February 18, 2024 | April 27, 2025 |
| December 23, 2021 | February 23, 2023 | February 19, 2024 | |
| December 24, 2021 | February 24, 2023 | February 21, 2024 | |
| December 25, 2021 | February 25, 2023 | March 1, 2024 | |
| December 27, 2021 | February 27, 2023 | March 2, 2024 | |
| February 22, 2022 | February 28, 2023 | March 3, 2024 | |
| March 5, 2022 | March 1, 2023 | March 4, 2024 | |
| March 19, 2022 | March 5, 2023 | March 7, 2024 | |
| March 20, 2022 | March 7, 2023 | March 23, 2024 | |
| March 28, 2022 | March 10, 2023 | March 24, 2024 | |
| April 16, 2022 | March 11, 2023 | March 28, 2024 | |
| April 21, 2022 | March 14, 2023 | March 30, 2024 | |
| April 22, 2022 | March 19, 2023 | April 5, 2024 | |
| September 19, 2022 | March 21, 2023 | April 13, 2024 | |
| November 2, 2022 | March 22, 2023 | April 14, 2024 | |
| November 7, 2022 | March 23, 2023 | May 5, 2024 | |
| November 8, 2022 | March 29, 2023 | November 2, 2024 | |
| November 9, 2022 | May 2, 2023 | November 12, 2024 | |

* Significant Rain Events are days where the 24-hour rainfall total was at least 0.1 inches according to publicly available rain and weather data collected at a station located near the Facility.